UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Edward Atherton and Rebecca Atherton,<br><br>    Plaintiffs,<br><br>  v.<br><br>Phyllis S. Lewis, Trustee, et al. for Phyllis S. Lewis Trust Dated January 21, 2015, et al.,<br><br>    Defendant. | Civil Action No. 2:23–cv–698–kjd |

**OPINION AND ORDER**
(Doc. 44)

Plaintiffs Edward Atherton and Rebecca Atherton (the Athertons) bring claims for negligence and loss of consortium against Defendant Phillis S. Lewis in her capacity as trustee for the Phyllis S. Lewis Trust Dated January 21, 2015. Mr. Atherton alleges that he slipped on ice and injured himself on Ms. Lewis's driveway while attempting to deliver a package to Ms. Lewis's home for his employer Federal Express (FedEx). Mr. Atherton alleges that Ms. Lewis was negligent by failing to maintain safe pathways to and from her home and that Mr. Atherton suffered injuries as a result. The Athertons seek compensatory damages.

Ms. Lewis has moved for summary judgment on both claims, asserting that the Athertons have not demonstrated a genuine dispute of material fact because Mr. Atherton's testimony is insufficient to establish negligence; the icy driveway was an "open and obvious" danger; and Mr. Atherton has not shown that Ms. Lewis knew or should have known of the allegedly unsafe condition of the driveway.

For the reasons explained below, Defendant's Motion for Summary Judgment (Doc. 44) is DENIED.

**Factual Background**

The following facts are taken from the parties' summary judgment submissions and the relevant portions of the record. In accordance with the summary judgment standard, this factual recitation "resolve[s] all ambiguities and draw[s] all factual inferences" in favor of the Athertons as the non-moving parties. *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

Mr. Atherton worked for FedEx at all relevant times. (Doc. 1 at 1, ¶ 5.) Part of Mr. Atherton's job involved delivering packages to residences. (*Id.* ¶ 6.)

At approximately 11:30 a.m. on December 21, 2020, Mr. Atherton visited Ms. Lewis's home to deliver a package. (Doc. 44-6 at 1, ¶¶ 1–3.) At the time, Ms. Lewis's driveway had approximately two inches of snow covering a layer of ice. (*Id.* at 2, ¶ 8.)

Mr. Atherton exited his truck and began to walk up Ms. Lewis's driveway to deliver the package. (*Id.* at 1, ¶ 3.) He walked down the driveway slowly shuffling his feet because the driveway had a downhill slope and he saw that the driveway was covered with snow. (Doc. 44-3 at 8:4–9:12.) However, Mr. Atherton did not see any icy conditions while walking down the driveway. (*Id.* at 9:3–6.)

Partway down the driveway, Mr. Atherton slipped on snow-covered ice and fell. (Doc. 44-6 at 1, ¶ 3.) Mr. Atherton immediately felt a pop and significant discomfort. (Doc. 44-7 at 1.) He landed flat on his back on the driveway and tried to move his legs but discovered that he could not. (Doc. 44-3 at 11:1–18). After using his hands to straighten out his legs and lying on the driveway for a period of time, Mr. Atherton crawled towards his delivery truck. (*Id.* at 12:11–13.) A woman driving by noticed Mr. Atherton approaching his truck and asked if he needed help. (*Id.* at 12:22–13:1.) Mr. Atherton accepted her assistance and told the woman he had a cell

phone in his truck. The woman opened the truck and retrieved Mr. Atherton's cell phone. (*Id.* at 13:2–5.) They called 911, and an ambulance arrived to take Mr. Atherton to the hospital. (*Id.* at 13:18–14:23.)

At the hospital, Mr. Atherton experienced knee pain and swelling and could not extend his knees. (Doc. 44-7 at 1.) He rated the pain as "six" on a scale of one to ten. (*Id.*) Mr. Atherton was ultimately diagnosed with bilateral quad separation requiring a hip replacement. (Doc. 44-6 at 2, ¶ 5.)

On December 11, 2023, Mr. Atherton and his wife Rebecca Atherton filed a complaint in this Court alleging one count of negligence with respect to Mr. Atherton and one count of loss of consortium with respect to Ms. Atherton. (*See generally* Doc. 1.) *See also Lorrain v. Ryan*, 628 A.2d 543, 549 (Vt. 1993) (citation modified) ("A woman has a right to recover for loss of consortium against a tortfeasor who injures her spouse.").

## Legal Standards

**I.    Summary Judgment**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

If the moving party demonstrates that there are no genuine issues of material fact, the burden shifts to the nonmoving party, who must present "significantly probative supporting evidence of a disputed fact." *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007)

(internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 249). Should the nonmoving party "fail[] to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor" on an essential element of a claim on which "the [nonmoving party] [bears] the burden of proof," the moving party is entitled to summary judgment. *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (citations omitted).

In considering a motion for summary judgment, the court is "required to resolve all ambiguities and draw all factual inferences in favor of the nonmovant." *Robinson*, 781 F.3d at 44 (internal quotation marks omitted); *see SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016) ("[A] party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments. . . ."). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-moving party "cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible." *Hamlett*, 496 F. Supp. 2d at 328 (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *see Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847(SJ), 1999 WL 184118, at *1 (E.D.N.Y. Mar. 18, 1999) ("[T]he court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative.").

The court's role in adjudicating a motion for summary judgment "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

## II. Negligence and Loss of Consortium

To succeed on a negligence claim, a plaintiff must prove duty, breach, causation, and harm. *Cheney v. City of Montpelier*, 2011 VT 80, ¶ 9, 190 Vt. 574, 27 A.3d 359, (2011). The Vermont Supreme Court has adopted §§ 343 and 343A[1] of the Restatement (Second) of Torts as part of Vermont's law of negligence. *See LeClair v. LeClair*, 2017 VT 34, ¶ 11 n.4, 204 Vt. 422, 169 A.3d 743 (2017).

A loss of consortium claim is a derivative action, and recovery for loss of consortium depends on the success of the underlying tort claim. *See Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 38, 219 Vt. 121, 315 A.3d 978 (2024). Therefore, if the court grants summary judgment in favor of the defendant on plaintiff's negligence claim, the derivative claim for loss of consortium must also be resolved on summary judgment. *See id.*

## Analysis

**I. Ms. Lewis has not shown that Mr. Atherton's testimony contains "inescapable and unequivocal" contradictions such that no reasonable jury could credit his account of the relevant events.**

A court reviewing a summary judgment motion "generally should not weigh evidence or assess the credibility of witnesses." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). But in "the rare circumstance" when a non-moving party relies "almost exclusively on his or her own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for" the non-moving party, "and thus

---

[1] Section 343 addresses "dangerous conditions known to or discoverable by possessor" and Section 343A addresses "known or obvious dangers."

5

whether there are any genuine issues of material fact, without making some assessment of" the non-moving party's account. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019) (citation modified). In such a situation, the court must "identify more than record ambiguity or incompleteness to conclude that" a party's testimony "could not raise a genuine issue of fact." *Id.* Rather, the court must find the contradictions between the record evidence and the party's testimony "inescapable and unequivocal" to find that the testimony raised only "a sham issue of fact." *Id.* (internal quotation marks omitted). In other words, the non-moving party's version of the facts must be "so utterly discredited by the record that no reasonable jury could have believed" it. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see* 11 *Moore's Federal Practice - Civil* § 56.22 (2025) (given that "courts must be cautious not to weigh the evidence or make impermissible credibility determinations," the "'blatant contradiction' exception to the general rule that the court accepts the nonmovant's version of the facts must be used sparingly") (citation omitted).

In Ms. Lewis's view, the Court should grant summary judgment in her favor because "there are too many contradictions and impossibilities in Mr. Atherton's story for a jury to give it any weight," and therefore the evidence is insufficient to establish a negligence claim. (Doc. 44 at 5.) *See also Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988) (holding that a moving party, if the non-moving party bears the burden of proof at trial, may satisfy its burden on summary judgment by demonstrating that the non-moving party's "evidence is insufficient to establish an essential element" of the claim).

According to Ms. Lewis, a reasonable jury could not believe that Mr. Atherton injured himself on Ms. Lewis's property because his accounts of his injury at his deposition and in his statements to medical providers contradict one another:

6

| **Account of slip and fall at deposition** | **Account of slip and fall in medical records** |
|---|---|
| Pulled delivery truck just past the driveway, walked alongside truck and behind it to enter driveway, and proceeded 10 feet down the driveway, about halfway, when he slipped and fell. Def.'s Statement of Facts (SUMF) ¶¶ 2–6. | After slipping and falling on the driveway, reached up to try to pull himself up into the truck (suggesting that truck was parked in the driveway, not the street). SUMF ¶ 14. |
| Slipped and landed on his back with legs tucked underneath his body. SUMF ¶¶ 6–7. | First fell with right leg behind him, and then, when trying to pull himself up into truck, fell again with his left leg under and behind him. SUMF ¶ 14. |
| After slipping and falling, he then crawled back up the driveway, along the street, and to the driver's side door to try to reach his cell phone. SUMF ¶ 8. | After slipping and falling, he reached up to try to pull himself up into the truck (suggesting that truck was parked in the driveway, not the street). SUMF ¶ 14. |

In addition to these alleged contradictions, Ms. Lewis identifies several additional deficiencies in Mr. Atherton's account of the incident:

- He could not identify the driveway on which he fell from a packet of nineteen photographs of driveways (Doc. 44 at 3–4);

- He claims to have walked downhill on the driveway, but Ms. Lewis's driveway is uphill (*id.* at 5);

- He characterized "halfway" down the driveway as 10 feet from the street, but Ms. Lewis's driveway is approximately 100 feet long (*id.*);

- He stated that Ms. Lewis's house is visible from the road, but in fact trees block the view of the house from the road (*id.*)

In sum, Ms. Lewis contends that she is entitled to summary judgment because no reasonable jury could find in Mr. Atherton's favor given the "contradictions and impossibilities in [his] story." (*Id.*)

The Court does not find that Mr. Atherton's testimony contains "inescapable and unequivocal" contradictions such that it only raises "a sham issue of fact." *See Bentley*, 935 F.3d at 86. The record provides plausible explanations for certain of the alleged "inconsistencies." *See*

7

*id.* at 87 ("[O]n summary judgment, a court should not disregard testimony if there is a plausible explanation for its contradiction by other evidence."). Mr. Atherton clarified at his deposition that he fell twice in two different locations: first on the driveway while approaching the house, and a "second time on the road" after he "crawled to the truck" and his "knee just buckled" while he "tried to pull [him]self up to open the door." (Doc. 44-3 at 23:22–24:3.)

As to whether Ms. Lewis's house was visible from the road or whether trees blocked the view from the road, a photograph of Ms. Lewis's house from the road depicts the house, at most, as only partially obscured by trees. (Doc. 44-1 at 4, ¶ 21; Doc. 44-5 at 13.) The same photograph shows that the house sits well below the entrance to the driveway from the road, supporting Mr. Atherton's statement that he walked downhill on the driveway. (Doc. 44-5 at 13.)

Summary judgment is further unwarranted because the remaining purported inconsistencies in Mr. Atherton's evidence do not rise to the level of a "version of events [] so utterly discredited by the record that no reasonable jury could [believe] him." *Scott*, 550 U.S. at 380. For example, while Mr. Atherton did state that he fell "about halfway" down Ms. Lewis's driveway "approximately 10 feet" from the road, (*see, e.g.*, Doc. 44-6 at 2, ¶ 7), he also testified several times during his deposition that he did not know precisely how long the driveway was or how far he was from the road when he fell, (*see* Doc. 44-3 at 9:13–17, 10:2–11, 17:14–19:13.) A reasonable jury could conclude that Mr. Atherton's inability to accurately recall the length of the 100-foot driveway does not undermine his overall credibility, particularly given that Mr. Atherton had just suffered a traumatic fall, experienced significant pain, and was focused on receiving assistance. (*See id.* at 17:4–9 (testimony of Mr. Atherton that "the last thing [he] wanted to remember was the driveway when [he] was in that much pain" and that his mind was "not trying to remember the driveway where [he] fell" when he "just wanted to get help, because

[he] knew there was something wrong."); *see also id.* at 10:5–7, 16:13–15 (statements of defense counsel that he understood Mr. Atherton was "not out there with a tape measure" and that he "imagine[s] this was one of the most traumatic days of [Mr. Atherton's] life.").) By the same token, Mr. Atherton's minor variations regarding whether he first fell in the driveway on "both legs" or his "right leg" do not "so utterly discredit[]" his testimony that no reasonable jury could find that he fell in Ms. Atherton's driveway. *Scott*, 550 U.S. at 380. At most, the alleged inconsistencies require "assessments of credibility" that "are matters for the jury, not for the court on summary judgment." *Sanchez as Est. of Munson v. Helen Porter Nursing Home, Inc.*, No. 2:20-CV-153, 2023 WL 6516406, at *5 (D. Vt. Oct. 5, 2023) (quoting *Jeffreys*, 426 F.3d at 553–54); *see also Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 265 (S.D.N.Y. 1978), *aff'd*, 603 F.2d 214 (2d Cir. 1979) ("I recognize that where the affidavit of a party opposing summary judgment differs from, or varies his evidence as given by deposition, the conflict may disclose an issue of credibility requiring trial.").

Ms. Lewis's reliance on *Bentley v. AutoZoners, LLC*, 935 F.3d 76 (2d Cir. 2019) to wholly discredit the evidentiary significance of Mr. Atherton's testimony is misplaced. *Bentley* involved a plaintiff whose contradictory statements centered around whether her employer was liable for a hostile work environment because it had *notice* of the sexist comments of one of its employees toward Bentley. *See* 935 F.3d at 86. The contradictions at issue in *Bentley* were more numerous and substantial than the contradictions alleged in this case. For example, Bentley stated in her deposition that she sent the human resources (HR) manager text messages contemporaneously reporting a sales manager's sexist comments. *Id.* When the record of her text messages with the HR manager revealed no such reports, the plaintiff claimed to have called the HR manager to report the comments instead of texting. *Id.* But even the plaintiff's revised

testimony conflicted with her previous signed statement, generated as part of an interview with the HR manager, that she had not reported the comments. *Id.* at 87. The court found plaintiff's explanation—that she believed the question only addressed whether she had reported the comments to her store manager—not plausible. *Id.* at 86–87; *see also id.* at 87 ("Given the fact that [the interview] was conducted by [the HR manager]—the very person to whom, at deposition, she claimed to have been routinely reporting [the sales manager's] sexist comments—the interview question, 'Did you report these comments' would reasonably be expected to prompt the answer, 'Yes, to you,' or at least the inquiry, 'You mean, to anyone other than you?'"). These examples, and the others detailed in the decision, demonstrate the clear contrast between the testimony at issue in *Bentley* and Mr. Atherton's testimony. The alleged inconsistencies in this case simply do not rise to the level of those in *Bentley*—that is, testimony that was "inescapably and unequivocally contradicted by [the plaintiff's] own sworn and written statements . . . [with] no plausible explanation for the multitude of contradictions." *Id*. at 88.

Because a reasonable jury could believe Mr. Atherton's testimony that he injured himself on Ms. Lewis's driveway, Ms. Lewis has not shown that the undisputed evidence is insufficient to meet an essential element of the negligence claim. *See Farid*, 850 F.2d at 924 (2d Cir. 1988).

II.    **Ms. Lewis has not demonstrated the absence of a factual dispute regarding whether the dangerous conditions of her driveway were "open and obvious."**

Mr. Atherton's negligence claim requires him to prove that Ms. Lewis owed him a duty to maintain a safe driveway, despite ice and snow, and that she breached that duty.[2] "Vermont law has long recognized that property owners have a duty of reasonable care to treat or remove

---

[2] Property owners in Vermont owe the same duty of care to invitees and licensees. *LeClair*, 2017 VT at ¶ 11 n.5 ("In *Demag v. Better Power Equipment, Inc.*, 2014 VT 78, ¶ 26, 197 Vt. 176, 102 A.3d 1101, we abolished the common law distinction between the duty a land possessor owes to an invitee and the duty owed to a licensee. The duty owed to an invitee now controls for both types of persons entering onto the land.").

snow and ice." *Merritt v. United States*, Case No. 5:18-cv-200, 2022 WL 17573836, at *11 (D. Vt. Oct. 31, 2022). However, "[n]egligence [in the removal of ice and snow] is not viewed as an absolute rule of conduct but depends upon the circumstances." *Wakefield v. Tygate Motel Corp.*, 640 A.2d 981, 981 (Vt. 1994). In other words, Vermont law "require[s] courts to consider the reasonableness of the defendant's conduct in light of the conditions then present." *Merritt*, 2022 WL 17573836, at *12.

Ms. Lewis contends that she did not breach her duty of reasonable care to Mr. Atherton because the "slippery" driveway was open and obvious. (Doc. 44 at 7.) *See also* Restatement (Second) of Torts § 343A cmt. e (A.L.I. 1965) ("Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."). Mr. Atherton testified that he saw snow on the driveway and walked "shuffling [his] feet little by little slowly" towards the house. (Doc. 44-3 at 7, 42:15–17.) Ms. Lewis asserts that because Mr. Atherton was aware of the risk of proceeding down the driveway, she had no obligation to take any further steps to promote his safety.

"As a general matter, the determination that a danger is sufficiently open and obvious to preclude any duty to warn is a highly fact specific inquiry and, as a result, is rarely resolved on summary judgment." *Cuntan v. Hitachi KOKI USA, Ltd.*, No. 06-CV-3898(RRM)(CLP), 2009 WL 3334364, at *12 (E.D.N.Y. Oct. 15, 2009); *see also Metzgar v. Playskool Inc.*, 30 F.3d 459, 466 (3d Cir. 1994) ("Under a negligence theory, although a failure to warn claim may be defeated if the risk was obvious or known, the question of obviousness is more properly submitted to a jury than disposed on motion for summary judgment."); *Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 731–32 (1st Cir. 1986); *McDowell v. Wal-Mart Stores, Inc.*, No.

305CV435/MCR/EMT, 2006 WL 3498139, at *3 (N.D. Fla. Dec. 4, 2006) ("The question of the openness and obviousness of a danger is generally not to be resolved on a motion for summary judgment."). Moreover, "a possessor may still be liable for open and obvious dangers if the possessor knows or should know that an injury is likely to result from a failure to warn, despite the open and obvious risks." *Merritt*, 2022 WL 17573836, at *8 (citing *Terrill v. Spaulding*, 61 A.2d 611, 612–13 (Vt. 1948)).

Summary judgment is not warranted on this record because a reasonable jury could conclude that the danger was not open and obvious. As Mr. Atherton notes, a reasonable jury could rely on several of Ms. Lewis's statements to find that the danger was not open and obvious. When Ms. Lewis left her home on the morning of the accident, she walked from her door to the car without slipping or falling. (Doc. 44-4 at 1, ¶¶ 8–9, 11.) Ms. Lewis's car did not slip or skid while exiting the driveway. (*Id.* ¶ 10.) Ms. Lewis further averred that "on the date of Plaintiff's fall, [she] had no reason to believe [her] driveway was slippery or posed a hazard to pedestrians." (*Id.* at 2, ¶ 16 (citation modified).) A reasonable jury could credit Ms. Lewis's testimony to determine that the danger was not open or obvious because Ms. Lewis herself did not notice it. This disputed issue of material fact precludes summary judgment.

Ms. Lewis further contends that the Court should grant summary judgment because "there is no evidence that Ms. Lewis should have anticipated [Mr. Atherton] would encounter the condition [by walking] instead of simply driving up her driveway." (Doc. 46 at 5.) But such an assertion, if proven, would only be relevant if there were no dispute that the danger posed by the slippery driveway was open and obvious. *See* Restatement (Second) of Torts § 343A cmt. f. ("There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or

obvious danger."); *Merritt*, 2022 WL 17573836, at *9. But as discussed above, whether the danger was open and obvious is a disputed factual issue. In other words, a reasonable jury could find on this record that Ms. Lewis should have "expect[ed] that [Mr Atherton would] not discover or realize the danger" of the slippery driveway and thus had a duty to take protective steps. *See* Restatement (Second) of Torts § 343(b). Therefore, Ms. Lewis is not entitled to summary judgment on this ground.

### III. Summary judgment is not warranted because there is a disputed issue of material fact regarding Ms. Lewis's notice of the hazard.

Ms. Lewis contends that she is entitled to summary judgment because Mr. Atherton has not shown a dispute of material fact regarding whether Ms. Lewis had notice of the slippery conditions on her driveway. (Doc. 44 at 7.) *See also Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (internal quotation marks omitted) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists, but when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to an absence of evidence on an essential element of the nonmovant's claim."). Ms. Lewis asserts that Mr. Atherton "offers no evidence that Ms. Lewis knew or should have known that her driveway posed a risk to Mr. Atherton." (Doc. 46 at 4.) Further, Ms. Lewis offers her sworn affidavit attesting that on the date of Mr. Atherton's fall she "had no reason to believe her driveway was slippery or posed a hazard to pedestrians." (Doc. 44-1 at 5, ¶ 41.)

Ms. Lewis has not met her burden of showing no genuine dispute that Ms. Lewis was or should have been aware of the slippery conditions of her driveway. The record contains interrogatory responses from Mr. Atherton stating, in part, that he slipped and fell on Ms. Lewis's driveway "at approximately 11:30 a.m." on "about 2 inches of snow with ice underneath." (Doc. 44-6 at 1–2, ¶¶ 1, 8.) Ms. Lewis averred that she "was not home when

13

Plaintiff fell" because "earlier that day, [she] left [her] house to do some shopping in town." (Doc. 44-4 at 1, ¶¶ 7–8.) Viewing the evidence in the light most favorable to Mr. Atherton, a reasonable jury could infer that Ms. Lewis—who was "in town" the morning of the accident and whose driveway had already accumulated two inches of snow when Mr. Atherton fell—knew or should have known that it was snowing at her residence nearby and that her driveway required clearing. *See Wakefield*, 640 A.2d at 982 (emphasis added) (upholding jury instruction that "[w]inter weather is a reality of life in this area. On the one hand slippery conditions cannot be wholly prevented, but *on the other they are foreseeable.*"); *cf. Merritt*, 2022 WL 17573836, at *12 (alteration in original) ("The court is not willing to announce a new rule of Vermont state law that *no* duty is owed by property owners or their contractors until the rain or snow comes to an end.").

Ms. Lewis's cited cases do not compel a different conclusion because they do not contain evidence of how long the dangerous conditions had been present. *See Parker v. Univ. of Vt. Med. Ctr.*, No. 2020-058, 2020 WL 5291405, at *1–2 (unpub. entry order) (Vt. Sept. 4, 2020) (summary judgment record in slip-and-fall case contained no evidence of how long water had been on the bathroom floor because hospital records did not identify individual responsible for cleaning and maintaining the bathroom at the time of accident three years earlier); *Bernasconi v. City of Barre*, 2019 VT 6, ¶ 14, 209 Vt. 419, 206 A.3d 720 (2019) (summary judgment record contained no evidence showing how long hole in cemetery had existed and therefore no evidence that "the Cemetery would have found the hole had it exercised reasonable care"). Unlike *Parker* and *Bernasconi*, the evidence in this case suggests that snow had been present on Ms. Lewis's driveway for a significant period of time—at a minimum, long enough to accumulate approximately two inches of snow. Moreover, unlike a puddle of water on the floor or a hole in

14

the ground, snowfall is typically forecast in advance and, once underway, readily observable such that a homeowner in the area can know that it is snowing at her home even when she is not there. *See Wakefield*, 640 A.2d at 982. Accordingly, in contrast to *Parker* and *Bernasconi*, the record evidence here creates a triable issue of fact regarding Ms. Lewis's knowledge of the potentially hazardous condition of her driveway.

With respect to Ms. Lewis's statement that she had no reason to believe her driveway was slippery, the Court cannot rely on this statement because "in ruling on a motion for summary judgment, the court must disregard all evidence favorable to the moving party that the jury is not required to believe." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227–28 (2d Cir. 2024) (citation modified); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (holding that on summary judgment "the court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that that evidence comes from disinterested witnesses*") (emphasis added) (internal quotation marks omitted); *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *9 n.16 (S.D.N.Y. Mar. 11, 2022) ("Such self-serving statements are also insufficient grounds to grant summary judgment in Plaintiff's favor."). Nor can the Court consider Ms. Lewis's statement that "since [she] had left the house earlier that day, it is possible the driveway became slippery for pedestrians during her absence." (Doc. 46 at 4.) On summary judgment, the court "must draw all reasonable inferences in favor of the nonmoving party, even though contrary inferences might reasonably be drawn," *Moll*, 94 F.4th at 227 (citation modified).

In sum, because a reasonable jury could conclude that Ms. Lewis knew or should have known about the slippery conditions of her driveway, summary judgment is not warranted.

## Conclusion

For the reasons explained above, Defendant's Motion for Summary Judgment (Doc. 44) is DENIED.

Dated at Burlington, in the District of Vermont, this 6th day of March 2026.

*/s/ Kevin J. Doyle*
United States Magistrate Judge
